UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUKE ELLIOTT SOMMER,<br><br>Defendant. | CASE NO. CR09-0257JLR<br>CR09-0436JLR<br>CR06-5528JLR<br><br>ORDER |

## I.   INTRODUCTION

Before the court is Defendant Luke Elliot Sommer's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Mot. (Dkt. # 31);[1] Reply (Dkt. # 53).)  Plaintiff the United States of America (the "Government") opposes the motion.  (Resp. (Dkt. # 46).)  The court has considered the parties' submissions, the balance of the

---

[1] Mr. Sommer has three criminal cases in this district, and he filed motions for a reduction in sentence in all three.  (*See generally* (CR09-0257JLR, Dkt. # 31); (CR09-0436JLR, Dkt. # 8); (CR06-5528JLR, Dkt. # 445).)  Unless otherwise specified, the references to the docket in this order refer to the docket entries in Case No. CR09-0257JLR.

ORDER - 1

record, and the applicable law. Being fully advised, the court GRANTS in part Mr. Sommer's motion.

## II. BACKGROUND

Mr. Sommer is a 36-year-old inmate currently detained at Coleman II United States Penitentiary ("Coleman II"). (*See* Resp. at 7; PSR 09-0257 & 09-0436 (Dkt. # 48 (sealed)) at 1; PSR 06-5528 (Dkt. # 48 (sealed)) at 1.[2]) He is in prison for: (1) orchestrating and committing an armed bank robbery and unlawfully possessing a grenade; (2) assaulting another inmate; and (3) soliciting the murder of an Assistant United States Attorney ("AUSA"). (*See generally* PSR 09-0257 & 09-0436; PSR 06-5528; Judgment 09-257 (CR09-0257JLR, Dkt. # 29); Judgment 09-0436 (CR09-0436JLR, Dkt. # 6); Judgment 06-5528 (CR06-5528JLR, Dkt. # 333).)

**A. The Armed Bank Robbery and Mr. Sommer's Guilty Plea and Sentence**

Mr. Sommer joined the United States Army when he was 17 years old. (PSR 06-5528 ¶ 87; Mot. at 5.) He became an Army Ranger and was deployed to Iraq shortly before his 18th birthday. (*See* Mot. at 5-6 (noting that he was also deployed to Afghanistan).) Upon his return to the United States, Mr. Sommer was stationed at the Fort Lewis Military Reservation ("Fort Lewis") in Pierce County, Washington. (*Id.* (describing the trauma Mr. Sommer experienced while deployed and upon returning to

//

---

[2] The presentence report ("PSR") for Case No. CR06-5528JLR appears on pages 1-22 of exhibit 48, and the PSR for Case Nos. CR09-0257JLR and CR09-0436JLR appears on pages 23-40 of exhibit 48. When citing to the each of the PSRs, the court uses the PSR's internal pagination unless otherwise stated.

base, as well as the mental health issues he experienced as a result of that trauma);[3] *see also* PSR 06-5528 ¶ 87.) In the summer of 2006, Mr. Sommer developed a plan to rob a bank and enlisted two civilian friends and two other Army Rangers to help him commit the robbery. (PSR 06-5528 ¶¶ 21-22, 27, 29-33; Plea Agreement 06-5528 (CR06-5528JLR, Dkt. # 277) at 7.) Mr. Sommer led the men in a training session with a mock layout of the bank and instructed them on their roles in the robbery. (PSR 06-5528 ¶¶ 22, 32; Plea Agreement 06-5528 at 7-8.)

On August 7, 2006, Mr. Sommer and the others robbed a bank in Tacoma, Washington. (PSR 06-5528 ¶¶ 12-19, 21-22, 33; Plea Agreement 06-5528 at 8.) The men wore body armor, carried fully automatic AK-47 rifles and/or semi-automatic handguns, and brandished their weapons during the robbery. (PSR 06-5528 ¶¶ 12-15; Plea Agreement 06-5528 at 8 (stating that Mr. Sommer provided the others with weapons).) They made off with more than $50,000.[4] (PSR 06-5528 ¶ 28.) During the investigation into the robbery, investigators also learned that Mr. Sommer possessed, without authorization, three fragmentation grenades, two flash-bang grenades, a smoke grenade, and an improvised explosive device, all of which belonged to the U.S. Military.

//

---

[3] Mr. Sommer also states that he endured significant trauma as a child, which included being molested by a neighbor and physically and emotionally abused by his father. (*See* Mot. at 4, 22; *see also* PSR 06-5528 ¶¶ 89-91.)

[4] When investigators searched Mr. Sommer's room at Fort Lewis following the robbery, they found $10,000, eight loaded AK-47 magazines, and two AK-47 rifles hidden in the ceiling tiles over the bed. (PSR 06-5528 ¶ 19 (stating that both rifles had their stocks removed and were fully automatic).)

ORDER - 3

(Plea Agreement 06-5528 at 9-10; PSR 06-5528 ¶¶ 26, 35-38; *see also id.* ¶ 26 (noting that Mr. Sommer also possessed an additional fully automatic AK-47 rifle).)

Mr. Sommer was arrested in Canada about a week after the robbery. (PSR 06-5528 ¶ 24.) He was released to house arrest while he awaited an extradition hearing. (*Id.*) Mr. Sommer, however, absconded from house arrest and lived as a fugitive for several months before he was rearrested and ultimately extradited to the United States. (*Id.* ¶¶ 24, 42 (noting that he was extradited about a year and a half after his original arrest).)

In May 2007, a grand jury returned a 14-count indictment naming Mr. Sommer and his co-conspirators. (*See* 4th Indictment 06-5528 (CR06-5528JLR, Dkt. # 204); PSR 06-5528 ¶ 1.) Mr. Sommer was named in 11 counts, including conspiracy to commit armed bank robbery, armed bank robbery, possession of a fully automatic machine gun during and in relation to a crime of violence, brandishing a handgun during and in relation to a crime of violence, and several other offenses related to the possession and use of firearms and destructive devices. (*See* 4th Indictment 06-5528; PSR 06-5528 ¶ 1.) One year later, in May 2008, Mr. Sommer pleaded guilty in an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to: one count of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; one count of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d); one count of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of possession of an unregistered destructive device – hand grenade in violation of 26 U.S.C. §§ 5841 and 5861(d). (*See* Plea Agreement 06-5528 at 1-2.) The parties agreed

to various sentence enhancements and reductions under the United States Sentencing Guidelines ("U.S.S.G.") and agreed that the appropriate sentence was 288 months of imprisonment, less 11 months credit for time served in Canada while pending extradition. (*Id.* at 10-11, 14.) Had Mr. Sommer been tried and convicted of all 11 counts in the indictment, he would have faced a mandatory minimum sentence of 37 years of imprisonment. (*See* Gov. Sentencing Memo. 06-5528 (CR06-5528JLR, Dkt. # 316) at 7.)

On December 12, 2008, the Honorable Franklin D. Burgess[5] accepted Mr. Sommer's guilty plea and sentenced him, in accordance with the Rule 11(c)(1)(C) plea agreement,[6] to 288 months of imprisonment, less 11 months credit for time served in Canada, for a net sentence of 277 months. (*See* Judgment 06-5528 at 3; Order Accepting Guilty Plea (CR06-5528JLR, Dkt. # 332); 12/12/08 Min. Entry (CR06-5528JLR, Dkt. # 331); Sentencing Tr. 06-5528 at 17.) In accepting the 11(c)(1)(C) plea agreement, Judge Burgess noted that the proposed sentence was "harsh," but that Mr. Sommer's conduct was also "harsh." (*See* Sentencing Tr. 06-5528 at 16 ("When I see someone that had a career, someone your age, just completely not only affecting your life but everybody else that's involved here, from your family to the [bank] tellers, you touched a lot of folks here, all in a negative way.").) Judge Burgess also considered Mr. Sommer's

---

[5] Judge Burgess has since retired, and Mr. Sommer's 2006 case arising from the armed bank robbery was transferred to the undersigned. (*See generally* CR06-5528JLR Dkt.)

[6] A "sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines," as the court "is not permitted to deviate from the sentences stipulated in such agreements." *United States v. Pacheco-Navarette*, 432 F.3d 967, 971 (9th Cir. 2005); (*see also* Sentencing Tr. 06-5528 (CR06-5528JLR, Dkt. # 441) at 15 (stating that the court, when presented with a Rule 11(c)(1)(C) plea agreement, must either accept or reject the guilty plea and the parties' proposed sentence).)

ORDER - 5

history of mental health infirmities that may have contributed to his crimes,[7] but nevertheless found the agreed-upon sentence appropriate. (*See id.* at 16-17 (acknowledging Mr. Sommer's arguments about arrogance, bipolar disorder, and post-traumatic stress disorder ("PTSD") contributing to his decision to commit the crimes but noting that such arguments "don't create any defense to" the crimes).)

**B.    Mr. Sommer's Guilty Plea and Sentence for Assaulting Another Inmate and Soliciting the Murder of an AUSA**

The court remanded Mr. Sommer into custody following his sentencing hearing. (*See* Judgment 06-5528 at 3.) On January 23, 2009, nearly two months after Mr. Sommer was sentenced in the armed bank robbery case, Mr. Sommer assaulted another inmate in the Federal Detention Center at SeaTac, Washington. (PSR 09-0257 & 09-0436 ¶ 7.) Mr. Sommer repeatedly stabbed the inmate, who was one of his co-defendants in the armed robbery case, "with a homemade knife made from a piece of hard plastic." (*Id.* (stating that Mr. Sommer admitted that "he had been planning the assault for the past two months"); *see also* Plea Agreement 09-0257 & 09-0436 (Dkt. # 25) at 5-6.) Mr. Sommer was indicted on one count of assault with intent to commit murder and one count of assault with a deadly weapon. (Indictment 09-0257 (Dkt. # 11) at 1-2.)

//

---

[7] In Mr. Sommer's sentencing memorandum, he stated that he committed the crimes because he was "suffering from a delusional thought process" as a result of "bi-polar mental illness and combat related post-traumatic stress disorder" that "may have contributed to his decision to commit these acts." (Def. Sentencing Memo. 06-5528 (CR06-5528JLR, Dkt. # 320) at 2.)

ORDER - 6

Approximately two months later, Mr. Sommer solicited an undercover agent posing as a hit man to kill the AUSA who prosecuted him for the armed bank robbery. (PSR 09-0257 & 09-0436 ¶ 8; *see also* Plea Agreement 09-0257 & 09-0436 at 6 (stating that the FBI launched an undercover investigation after an inmate at FDC-SeaTac told the U.S. Attorney's Office and the FBI that Sommer wanted to kill AUSA "M.D."); *id.* at 7 (stating that the undercover agent was an FBI task force officer).) Mr. Sommer promised to pay the undercover agent approximately $15,000 to $20,0000 to kill the AUSA and told the undercover agent that "he did not care how the killing was done so long as news reports would indicate it was a murder rather than a possible accident." (Plea Agreement 09-0257 & 09-0436 at 7; PSR 09-0257 & 09-0436 ¶ 8.) Mr. Sommer was charged with one count of solicitation to commit a crime of violence. (Information 09-0436 (CR09-0436JLR, Dkt. # 1) at 1.)

In January 2010, Mr. Sommer pleaded guilty in a combined Rule 11(c)(1)(C) plea agreement to one count of assault with a deadly weapon in violation of 18 U.S.C. §§ 113(a)(3) and 7(3) and one count of solicitation to commit a crime of violence in violation of 18 U.S.C. §§ 373(a) and 7(3). (*See* Plea Agreement 09-0257 & 09-0436 at 1-2.) As part of the Rule 11(c)(1)(C) plea agreement, the parties agreed that the appropriate sentence for his offenses was 240 months of imprisonment, to be served consecutively to the sentence he was already serving for the charges associated with the armed bank robbery. (*Id.* at 7.)

On March 8, 2010, the court accepted Mr. Sommer's guilty plea and sentenced him to 240 months of imprisonment—120 months for the assault with a deadly weapon

count and 120 months for the solicitation to commit a crime of violence count—to be served consecutively to the 277-month sentence Mr. Sommer was already serving. (*See* Judgment 09-0257 at 2; Judgment 09-0436 at 2; 3/8/10 Min. Entry (Dkt. # 28).) The court remanded Mr. Sommer into custody following his sentencing hearing, and his projected release date is July 8, 2045. (*See* Judgment 09-0257; Judgment 09-0436; Comp. Release Memo. (Dkt. # 39 (sealed)).)

### III. ANALYSIS

Mr. Sommer now seeks a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the court to reduce his combined sentences from 517 months to 240 months. (*See generally* Mot. at 3.) The court begins by setting forth the standard of review before analyzing Mr. Sommer's motion.

**A.  Standard for a Reduction in Sentence**

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35. *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010). 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, "allows certain inmates to seek a form of sentence modification," commonly referred to as compassionate release,[8] "by filing motions to that effect with the

---

[8] "Although relief under § 3582(c) is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Millard*, No. CR-15-01391-PHX-DGC, 2022 WL 279596, at *2 n.1 (D. Ariz. Jan. 31, 2022) (quoting *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020)).

district court." *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020). Under § 3582(c)(1), courts have the authority to reduce a sentence upon the motion of an inmate if three conditions are met: (1) the inmate has either exhausted their administrative appeal rights of the Bureau of Prisons' ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with "applicable policy statements" issued by the United States Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5. If the inmate meets all three conditions, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding whether a reduction in sentence is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part, that a defendant may be eligible for compassionate release if "extraordinary and compelling reasons warrant the reduction"; the "defendant is not a danger to the safety of any other person or to the community"; and the "reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; *id.* cmt. n.1 (outlining four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction).

The Ninth Circuit, however, has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United*

*States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Therefore, the "Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*; *see also United States v. Van Cleave*, No. CR03-0247RSL, 2020 WL 2800769, at *5 (W.D. Wash. May 29, 2020) (referring to the policy statement as "persuasive, but not binding").

**B.      Exhaustion of Administrative Remedies**

Before considering the merits of Mr. Sommer's motion, the court must determine whether he has met the statutory exhaustion requirement for a reduction in sentence. *See* 18 U.S.C. § 3582(c)(1)(A). Mr. Sommer made a request for a reduction in sentence to the warden at Coleman II on January 29, 2022. (*See* Mot. at 14, Ex. 1.) Mr. Sommer then filed this motion on June 21, 2022—more than 30 days after he submitted his request to the warden. (*See generally* Mot.) The court finds that the statutorily required 30-day period has expired, and Mr. Sommer's motion is properly before the court.[9]

**C.      Extraordinary and Compelling Circumstances**

The court must next determine whether "extraordinary and compelling" circumstances warrant a reduction of Mr. Sommer's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Sommer bears the burden of establishing that "extraordinary and compelling reasons" exist that justify a reduction in sentence. *See United States v. Suryan*, No. CR19-0082RAJ, 2021 WL 3510423, at *2 (W.D. Wash. Aug. 10, 2021). Mr. Sommer argues that he is entitled to a reduction in sentence because

---

[9] The Government agrees that Mr. Sommer complied with § 3582(c)(1)(A)'s exhaustion requirement. (*See* Resp. at 8 n.1.)

of: (1) the "unjustly lengthy nature" of his sentence combined with his history of trauma, mental health, and young age at the time of his offense conduct; (2) the impact COVID-19 has had on his conditions of confinement; and (3) his "extraordinary" post-sentence rehabilitation. (*See generally* Mot. at 28-41.) The court addresses each argument individually before addressing whether Mr. Sommer's arguments, taken together, present extraordinary and compelling reasons warranting a sentence reduction.

### 1. Mr. Sommer's Lengthy Sentence Combined with His Individual Circumstances

Mr. Sommer contends that his history of trauma, mental health, and young age at the time he committed the underlying offenses, coupled with his 571-month sentence, present extraordinary and compelling reasons that justify a sentence reduction. (*See* Mot. at 28-32; Reply at 2-6.) Mr. Sommer notes that he was 20 years old when he recruited and led a group of coconspirators in armed bank robbery and 22 years old when he planned and executed an attack on one of his coconspirators in prison and solicited the murder of the AUSA who prosecuted him for the bank robbery. (*See* Mot. at 20.) Additionally, he details the abuse he faced as a child and the trauma he experienced while deployed with the Army Rangers, as well as the PTSD that he developed as a result of his childhood and military experiences. (*See id.* at 22-23, 4-7, 30-31.) He argues that "his [571-month] sentence overstates the severity of his conduct" and is clearly unjust "when viewed against similar sentences awarded for inarguably more serious crimes" and "in the face of his individual circumstances." (*Id.* at 29.) Mr. Sommer cites the 2010

//

amendment to U.S.S.G. § 5H1.1,[10] as well as several cases and scientific studies, to support his argument that the effects of youth and trauma on cognitive processing and brain development were underappreciated at the time of his sentencing. (*See id.* at 29-32; Reply at 4-6.)

The court acknowledges that, since Mr. Sommer's sentencing, society has "come to better understand the neurological differences in young brains that can drive youthful crime" and "that greater traumatic experiences in childhood correspond with riskier behavior and a greater likelihood of involvement in the criminal legal system." *United States v. Johnson*, No. 05-CR-00167-WHA-5, 2021 WL 5037679, at *2 (N.D. Cal. Oct. 30, 2021) (discussing such scientific developments and finding extraordinary and compelling reasons warranting a sentence reduction based on the defendant's age, lengthy sentence, and other personal circumstances); *see also Miller v. Alabama,* 567 U.S. 460, 472 & n.5, 489 (2012) (discussing scientific developments regarding youth and brain development and emphasizing the need for "individualized" sentencing when youth commit serious offenses).

The court does not discount the impact that Mr. Sommer's youth, history of trauma, and mental health may have had on his decision to commit the underlying

---

[10] In November 2010, after Mr. Sommer had been sentenced for his offenses, the U.S. Sentencing Commission added the following statement to U.S.S.G. § 5H1.1: "Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S. Sentencing Guidelines Manual App'x C, Amendment 739 (U.S. Sent'g Comm'n 2010), https://guidelines.ussc.gov/ac/739. That addition replaced this sentence: "Age (including youth) is not ordinarily relevant in determining whether a departure is warranted." *Id.*

ORDER - 12

offenses.  However, the court agrees with the Government's contention that "[e]ven if [Mr.] Sommer's evidence on brain development suggests that a defendant's youth at the time of a crime's commission might sometimes be seen as extraordinary and compelling reason to reduce his sentence, it is not one in this case." (Resp. at 16.)  The undersigned and Judge Burgess took Mr. Sommer's age and personal circumstances into consideration when they decided to accept the sentences stipulated to in the Rule 11(c)(1)(C) plea agreements.  (*See, e.g.*, Sentencing Tr. 06-5528 at 16-17 (adopting the stipulated 277-month sentence for the armed bank robbery related offenses after balancing Mr. Sommer's young age and mental health issues with the severity of his conduct and harm he caused others).)  Additionally, the court agrees with the Government that because of his plea agreement regarding the armed bank robbery, Mr. Sommer "is not serving a term of imprisonment remotely close to what he would have faced as a career offender absent his plea," and thus, his sentence "is not extraordinarily long in light of his offenses." (Resp. at 17; *see also* Gov. Sentencing Memo. 06-5528 at 7 (noting that Mr. Sommer would have faced a "mandatory minimum sentence of 37 years" of imprisonment had he been tried and convicted of all 11 counts in the indictment).)

      Considering only Mr. Sommer's lengthy sentence, age, mental health, and history of trauma, the court concludes that these circumstances do not present an "unusual set of facts" that compel this court to reduce his sentence.  *See Extraordinary Circumstances*, Black's Law Dictionary (11th ed. 2019) (defining "extraordinary circumstances" as a "highly unusual set of facts that are not commonly associated with a particular thing or event"); *see also Compelling Need*, Black's Law Dictionary (11th ed. 2019) (defining a

"compelling need" as a "need so great that irreparable harm or injustice would result if it is not met").[11]

### 2. Mr. Sommer's Conditions of Confinement at Coleman II

Mr. Sommer argues that COVID-19's impact on his conditions of confinement warrants a reduction in sentence. (*See* Mot. at 32-34.) He contends that the limits placed on inmate movement and programming during the COVID-19 pandemic, the fear of contracting COVID-19, and the problems he has experienced communicating with and receiving visits from his family in Canada have caused his time in custody to be more difficult than the court could have been expected it to be when he was sentenced. (*Id.*)

The court need not reiterate the widely known information regarding the symptoms of COVID-19, the devastating global impact of the virus, and the unprecedented challenges COVID-19 created for federal prisons. *See United States v. Rollness*, No. CR06-0041RSL, 2021 WL 4476920, at *4 (W.D. Wash. Sept. 30, 2021) (discussing COVID-19's impact on prisons). Moreover, the court does not discount the dangers associated with COVID-19 nor the difficulties prisons face in preventing and containing outbreaks.

//

---

[11] A significant number of criminal defendants likely committed their offenses at a young age and have a history of trauma and/or mental health issues. Thus, although Mr. Sommer was relatively young—20 and 22 years old—when he committed the underlying offenses and has a history of trauma and PTSD, the court cannot conclude that his 571-month sentence and personal circumstances present a "highly unusual set of facts." *Cf. United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

1          However, "general conditions that affect inmates indiscriminately throughout the
2  prison are insufficient to support an individual defendant's claim for compassionate
3  release." *United States v. Bolden*, No. CR16-0320RSM, 2020 WL 4286820, at *7 (W.D.
4  Wash. July 27, 2020); *see United States v. Thomas*, No. 3:17-CR-00051-SLG, 2021 WL
5  3924724, at *2 (D. Alaska Sept. 1, 2021) ("[E]very BOP inmate—and in fact nearly
6  every incarcerated person—has experienced limitations on their ability to communicate,
7  exercise, gain an education, and receive job skills training during the COVID-19
8  pandemic.  Conditions that are shared by nearly every inmate in the country are not
9  "extraordinary and compelling," and the restrictions [the inmate] is subject to are in no
10 way unique to him."); *United States v. Stringer*, No. CR18-0157RAJ, 2021 WL 3565430,
11 at *3 (W.D. Wash. Aug. 12, 2021) ("General concerns about possible exposure to
12 COVID-19 do not meet the criteria for extraordinary and compelling reasons for a
13 reduction in sentence." (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086 (N.D.
14 Cal. 2020))).  Courts have also rejected generalized claims "that [a defendant's] period of
15 incarceration, served during the time of Bureau of Prisons' COVID-19 restrictions, has
16 presented harsher punishment and made this past year more difficult."  *See Suryan*, 2021
17 WL 3510423, at *3 (stating that BOP lockdown "conditions, while challenging, do not
18 present an extraordinary and compelling reason to warrant his early release"); *United*
19 *States v. Becerra*, Case No. 17cr1465-LAB, 2021 WL 461699, at *2 (S.D. Cal. Feb. 8,
20 2021) ("The inconvenience caused by extended lockdown is not an 'extraordinary and
21 compelling reason.'").
22 //

While Mr. Sommer's conditions of confinement at Coleman II have been more challenging than the court could have predicted, this is a generalized claim that every inmate who has been in custody could assert and is not unique to Mr. Sommer. *See Suryan*, 2021 WL 3510423, at *3. Additionally, although the court is sympathetic to the reality that Mr. Sommer, like many inmates, would like to be closer to his family, it "agrees with other district courts that have concluded that a desire to be closer to family does not present an extraordinary and compelling reason justifying compassionate release." *See United States v. Rezene*, No. CR16-0185JLR, 2022 WL 766995, at *4 (W.D. Wash. Mar. 12, 2022). Accordingly, the court finds that Mr. Sommer's conditions of confinement imposed by the COVID-19 pandemic do not constitute "extraordinary and compelling" circumstances warranting a reduction in sentence. *See Suryan*, 2021 WL 3510423, at *3.

### 3. Mr. Sommer's Post-Sentence Rehabilitation

Mr. Sommer argues that his rehabilitation presents an extraordinary and compelling reason for a sentence reduction. (Mot. at 35-41.) Mr. Sommer offers evidence of his "extraordinary rehabilitation" in prison, including the "over 1,500 hours of educational, psychological, recreational, and vocational" courses and trainings he has completed during his incarceration; his lack of prison infractions since November 2018; his membership on the Conflict Resolution Committee; the GED tutor, Psychology Peer, and Inmate Companion positions that he holds; his volunteer efforts with the Food Service Department; his participation in the Challenge and Seeking Safety/Resolve programs; and psychological evaluations highlighting his personal progress in treatment.

(*See id.* at 9-14, 35-41, Exs. 2, 11-12, 15, 17.)  He also submits dozens of letters of support from fellow inmates, community members, and prison staff praising his character, work ethic, and efforts to help others.  (*See id.* at 9-14, 35-41, Exs. 3-10.)  This evidence, Mr. Sommer argues, demonstrates his "current self-reflection, maturity, care for others, and discipline in pursuing education and programming to better himself." (Reply at 7; *id.* at 2 (noting that "the change in Mr. Sommer is authentic and profound").)

The court acknowledges the positive change in Mr. Sommer and commends him for taking every opportunity to improve his life and the lives of those around him.  Although the court does not intend to minimize Mr. Sommer's progress, such rehabilitative efforts do not alone establish "extraordinary and compelling" circumstances warranting a sentence reduction.  28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence.); *see also Suryan*, 2021 WL 3510423, at *3; *United States v. Cruz-Cruz*, No. CR13-0049RSL, 2021 WL 1968389, at *5 (W.D. Wash. May 17, 2021).

### 4.  Considering Mr. Sommer's Arguments Together

Although none of Mr. Sommer's arguments on its own justifies a reduction in sentence, the court nevertheless finds that Mr. Sommer's arguments regarding (1) his lengthy sentence, age, mental health, and history of trauma and (2) his post-sentence rehabilitation, considered together, establish "extraordinary and compelling" reasons justifying a reduction in sentence.  The effects of youth and childhood trauma on cognitive development have become better understood since Judge Burgess and the undersigned originally sentenced Mr. Sommer, and Mr. Sommer's substantial

accomplishments during his incarceration show that he has risen above his traumatic past and has profoundly changed since he last appeared before the court. These factors together lead the court to conclude that a reduction in Mr. Sommer's sentence, consistent with the 18 U.S.C. § 3553(a) factors, is warranted in this case.

As has been the practice of other courts, *see United States v. Gaines*, No. C17-0264TSZ, 2020 WL 7641201, at *2 (W.D. Wash. Dec. 23, 2020) (collecting cases), the court will HOLD a hearing at which the parties may present their arguments regarding the appropriate sentence reduction, considering the relevant § 3553(a) factors. The virtual hearing will be conducted via ZoomGov.com. The court will provide the parties with written notice of the date and time of the hearing, as well as the link for the ZoomGov.com session. The parties shall file their sentencing memoranda, if any, by October 24, 2022.

### IV.     CONCLUSION

For the foregoing reasons, the court GRANTS in part Mr. Sommer's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (CR09-0257JLR, Dkt. # 31; CR09-0436JLR, Dkt. # 8; CR06-5528JLR, Dkt. # 445). The court concludes that "extraordinary and compelling reasons" warrant a reduction in Mr. Sommer's sentence, but DEFERS ruling on the appropriate sentence reduction. The court will HOLD a hearing to determine the appropriate term of imprisonment in light of the relevant factors set forth in 18 U.S.C. § 3553(a).

//

//

Dated this 12th day of October, 2022.

JAMES L. ROBART
United States District Judge

ORDER - 19